## Unemployment Compensation Records

MARGIOTTI, Attorney General, January 28, 1938.—You request advice as to whether the Division of Unemployment Compensation and Employment Service may disclose to the Department of Public Assistance the compensation records of those receiving unemployment compensation. The specific information which the Department of Public Assistance desires is: (1) A list of names of persons receiving unemployment compensation; (2) the amount of compensation being paid to a claimant; and (3) the approximate date either of past payments or when payments are being made. The Department of

Public Assistance requests this information in order to determine whether certain persons are eligible for relief.

The Department of Public Assistance is a new department of the State Government, created by the Act of June 24, 1937, P. L. 2003. Its general powers and duties are set forth as follows:

"Section 2502-A. Powers and Duties of the Department of Public Assistance.—The Department of Public Assistance shall have power, and its duty shall be—

"(a) To administer and carry out the provisions of the Public Assistance Law, and in so doing, to supervise local boards and to allocate to them on the basis of need and, as may be required for blind pensions, funds with which to provide assistance and funds for administrative expenses.

"(b) To take any other action authorized or required by this or any other law."

The Public Assistance Law is the Act of June 24, 1937, P. L. 2051. By section 4 of said act the Department of Public Assistance is required, inter alia:

"(a) To allocate to the local boards, on the basis of need . . . funds with which to provide assistance . . . and as may be needed, from time to time, *to keep a reasonable emergency fund in the hands of local boards, which shall be used by the executive director for the furnishing of assistance in emergency cases,* upon application to him, or under the direction of any member of the local board". (Italics ours.)

Section 14 of the Public Assistance Law, supra, abolishes the State Emergency Relief Board, which previously administered direct relief, and provides that the Department of Public Assistance shall thereafter exercise the powers and discharge the duties of the State Emergency Relief Board through the present county relief boards, or otherwise, until a county board of assistance is set up in the county, and then through such county board of assistance.

Section 9 of the Public Assistance Law points out who shall be eligible to receive assistance. Subdivision (d) of said section provides for the grant to those who have resided in the Commonwealth for at least one year immediately preceding the date of their application of "assistance to enable them to maintain for themselves and their dependents a decent and healthful standard of living". The "emergency" cases for which the Department of Public Assistance is required to provide a fund under section 4(a) of the act, so that assistance may be given to eligible residents of the Commonwealth to enable them to maintain a decent and healthful standard of living, has reference, among other things, to those cases arising from widespread unemployment. This is direct relief. Thus, direct relief to those who may be in need because of unemployment, and who are not able to qualify for some other form of public grant, is now administered through the Department of Public Assistance.

By Act no. 1 of the General Assembly, approved December 5, 1936, P. L. (1937) 2897, a system of unemployment compensation to be administered by the Department of Labor and Industry and its existing and newly-created agencies was established. This act is known as the Unemployment Compensation Law and was passed to make available to the citizens of this Commonwealth the benefits of the Federal Social Security Act, and to provide for its administration in the State. The purpose of its passage is set forth therein as follows:

"Section 3. Declaration of Public Policy.—Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the

systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Here we are dealing with two departments of the State Government. Accordingly, any pertinent provisions of The Administrative Code would apply to this situation. Section 501 of The Administrative Code of April 9, 1929, P. L. 177, provides, in part, as follows:

"Coördination of Work.—The several administrative departments, and the several independent administrative and departmental administrative boards and commissions, shall devise a practical and working basis for coöperation and coördination of work, eliminating, duplicating, and overlapping of functions, and shall, so far as practical, coöperate with each other in the use of employes, land, buildings, quarters, facilities, and equipment."

Obviously, the type of information requested is important in determining whether or not a person is eligible for relief. If it cannot be furnished by the Department of Labor and Industry, then the Department of Public Assistance will be required to make its own investigation to determine the facts. This would involve a duplication of time and expense which cannot be justified .

Section 502 of The Administrative Code, supra, provides as follows:

"Coöperative Duties.—Whenever, in this act, power is vested in a department, board, or commission, to inspect, examine, secure data or information, or to procure assistance, from any other department, board, or commission, a duty is hereby imposed upon the department, board, or commission, upon which demand is made, to render such power effective."

There is nothing in the Unemployment Compensation Law which prohibits your department from furnishing the particular type of information required by the Department of Public Assistance. Sections 206 and 207(b) apply to the furnishing of certain types of information which does not fall within the scope of the present inquiry.

The declared public policy which prompted the passage of the Unemployment Compensation Law, as expressed in section 3 of the act, is to provide protection against the hazards of unemployment and the spread of indigency by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own. Thus, the payment of unemployment compensation provided for by the Unemployment Compensation Law and the furnishing of assistance in "emergency" cases under the Public Assistance Law arise from the same cause, involuntary unemployment. Both acts aim to provide protection against the hazards of involuntary unemployment and its resultant spread of indigency. To this extent they occupy the same field. They are in pari materia and must be construed together. It follows that your department should furnish to the Department of Public Assistance any data or information in its possession which it is not prohibited by law from giving, unless it was the legislative intent that a person may be given assistance in the form of direct relief and receive unemployment compensation payments at the same time.

The information requested of your department by the Department of Public Assistance is entirely different

from that which may not be made public or open to public inspection. It is similar to that which your department is required to furnish any agency of the United States charged with the administration of public works or assistance through public employment under clause (*b*) of section 207 of the Unemployment Compensation Law, to enable such agency of the United States to avoid giving work relief during the time unemployment compensation is being paid. The disclosure of this information by your department to the Department of Public Assistance will serve a similar purpose, in that it will enable that department to suspend or discontinue direct relief during the time such person is receiving unemployment compensation. The inclusion of a section giving direct authority to furnish the information requested was not necessary, since it is the duty of the various departments of the State Government to coöperate and coördinate their activities.

Therefore, it is entirely proper for your department to furnish the information requested by the Department of Public Assistance. Good policy and common sense dictate that such information should be given. It is the duty of the State to provide for the needy, the hungry, and all those who, through no fault of their own, are unable to care for themselves. The rights of no one should be sacrificed, but at the same time the Commonwealth should administer relief adequately at the lowest possible cost to the taxpayers. "Chiseling" must be eliminated. If there is a question as to whether a certain individual is entitled to relief, the doubt should be resolved in favor of the individual. However, the Commonwealth ever must be on the alert to prevent persons who are not in need from receiving relief. Such "chiselers" not only harm the Commonwealth, but deprive the needy of those benefits which they are entitled to receive.

It is the duty of the various departments of the State Government to coöperate, to the end that there shall be no

"chiseling." The needy must be provided for adequately. At the same time, the State must be protected from fraud and unfounded claims. It would be a violent presumption to suppose the legislature intended that those receiving unemployment compensation payments could at the same time receive cash grants from public funds in the nature of direct relief. This would be the inevitable result if your department were held to be prohibited from disclosing to the Department of Public Assistance the information which it has requested, so long as this may be done without detriment to the worker and without bringing the unemployment compensation agency of the Commonwealth into disrepute.

In view of the fact that the information requested by the Department of Public Assistance may be lawfully disclosed by your department, it becomes your duty under section 502 of The Administrative Code to comply with its request.

Therefore, we are of the opinion:

(1) That you are authorized under the law and it becomes your duty to disclose to the Department of Public Assistance, in answer to a specific request in the case of each client, his or her name, eligibility to benefits under the Unemployment Compensation Law, as well as the date, amount, and duration of any payments thereunder; said information to be based solely upon the record of awards made by the Unemployment Compensation Division and not from any records or reports in the department procured under section 206 of the Unemployment Compensation Law, or furnished to the department by the Federal Social Security Board.

(2) The authority herein contained to disclose information shall be confined strictly to furnishing the same to the Department of Public Assistance, or any officer or employe of said department in the performance of his public duties, and shall not be disclosed to any other person or agency.